Filed 11/17/20  P. v. Bobo CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ALBERT KENNETH BOBO,<br><br>Defendant and Appellant. | B303305<br><br>(Los Angeles County<br>Super. Ct. No. A901428) |

APPEAL from an order of the Superior Court of Los Angeles County, Laura C. Ellison, Judge.  Reversed and remanded with directions.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and William N. Frank, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant and appellant Albert Kenneth Bobo of the 1982 murder and robbery of Daniel Hernandez. One of Bobo's accomplices was the actual killer. In 2019, Bobo petitioned for resentencing on his murder conviction pursuant to Penal Code section 1170.95.[1] The trial court appointed counsel for Bobo, but summarily denied his petition after finding he had failed to make a prima facie showing of entitlement to relief. We reverse the court's order and remand for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The offenses and Bobo's original appeal*

On March 30, 1982, Bobo, Isiah Smith, and John Williams were at Helen Keller Park in Los Angeles.[2] They spoke to Angelus Wilson about committing a robbery. Smith showed Wilson a handgun he was carrying in his waistband. Bobo said nothing during this conversation. After separating from Wilson, the trio approached Darryl Conerly and asked him to act as a lookout for a robbery at a nearby self-service car wash. Conerly agreed.

Bobo, Smith, and Williams then approached the victim, Daniel Hernandez, as he was apparently washing a truck at the car wash. One or more of the assailants yelled, "Raymond Crips." Hernandez attempted to spray Smith with water. Smith fired three shots at Hernandez, one of which struck and killed him. The assailants took Hernandez's wallet and $300 in cash that

---

[1] All further undesignated statutory references are to the Penal Code.

[2] We derive the facts from the unpublished opinion in Bobo's direct appeal, issued by Division Four of this court on August 15, 1984, of which we take judicial notice. (Evid. Code, §§ 452, subd. (d), 459.)

Hernandez had been carrying for his employer. They then left the car wash, encountering Wilson as they fled. Wilson agreed to drive them away from the scene.

While the group was driving away in Wilson's vehicle, Bobo had possession of Hernandez's wallet, which he threw out the window. The empty envelope that had contained the cash was left on the dashboard of Hernandez's truck.

Bobo was charged with conspiracy to commit robbery (§§ 211, 182), murder (§ 187), and robbery (§ 211). The jury found him guilty on all counts, and found the murder was in the first degree. It also found true allegations that a principal was armed with a firearm, and that Smith personally used a firearm in commission of the robbery and murder. (§ 12022, 12022.5.) The trial court sentenced Bobo to a term of 25 years to life for the murder, plus one year consecutive for the principal armed enhancement, for a total of 26 years to life. It stayed sentence on the conspiracy and robbery convictions pursuant to section 654.

As noted, in an unpublished opinion issued in August 1984, Division Four of this court affirmed Bobo's convictions. (*People v. Bobo* (Aug. 15, 1984, 44504) [nonpub. opn.].) It rejected Bobo's contentions that the trial court committed instructional error and that Bobo's sentence amounted to cruel or unusual punishment.

2. *Bobo's section 1170.95 petition and appeal*

In January 2019, after passage of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), Bobo filed a petition to vacate his murder conviction. He also requested the appointment of counsel. Attached to his petition was a declaration, signed under penalty of perjury, in which he averred that he was not the actual killer, "never intended" that the victim be killed, was not "in a position to influence that tragic outcome," and did not act

3

with reckless indifference to human life. He was "simply a participant in what he thought was going to be a robbery."

The trial court appointed counsel for Bobo. It granted several continuances requested by the People for filing of their opposition, which they eventually filed on December 3, 2019. Therein the People argued that Senate Bill 1437 was unconstitutional. They additionally averred that the petition should be denied because Bobo was a major participant in the crime and acted with reckless indifference to human life; further, they argued, he was at least guilty of second degree murder because the evidence showed he acted with implied malice. The People pointed to the facts that Bobo assisted in planning the robbery, knew his fellow gang member had a gun, took the victim's wallet, was "part of the force and fear used to rob the victim," and did not express shock or surprise after the killing.

On December 3, 2019, the trial court concluded that Bobo was ineligible for resentencing, based on the court of appeal's 1984 opinion.[3] The trial court reasoned that "even a cursory review of the record" of appeal indicated Bobo was ineligible. It explained: "Quoting from the Court of Appeal . . . [t]hey say that 'there was obvious premeditation in the commission of this crime by' [Bobo] in that 'he did know that the co-defendant, Mr. Smith, was armed with a firearm. He knew they were going to the car wash together for the purpose of committing an armed robbery.'

---

[3] The People's opposition was due on November 15, 2019, and Bobo's reply was due the day before the hearing, December 2, 2019. However, the People did not file their opposition until the date of the hearing. Bobo requested additional time to file a reply brief, but the trial court denied the petition without waiting for a reply.

4

[¶] I cannot see how in any view of this evidence on the record of appeal that he would fall within the purview of the re-sentencing statute. So I'm going to find that a prima facie showing has not been made, that he's not entitled to resentencing."

Bobo filed a timely notice of appeal.

## DISCUSSION

1. *Senate Bill 1437*

Senate Bill 1437, which took effect on January 1, 2019, limited accomplice liability under the felony murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, to ensure that a person's sentence is commensurate with his or her individual criminal culpability. (*People v. Cruz* (2020) 46 Cal.App.5th 740, 755; *People v. Verdugo* (2020) 44 Cal.App.5th 320, 323, review granted March 18, 2020, S260493; *People v. Munoz* (2019) 39 Cal.App.5th 738, 763, review granted Nov. 26, 2019, S258234.)

Prior to Senate Bill 1437's enactment, "murder committed in the perpetration of or attempt to perpetrate specified felonies, including robbery, was first degree murder." (*People v. Torres* (2020) 46 Cal.App.5th 1168, 1175, review granted June 24, 2020, S262011; see *People v. Powell* (2018) 5 Cal.5th 921, 942.) Senate Bill 1437 amended section 188 to state that malice may not be imputed to a person based solely on his or her participation in a crime. (§ 188, subd. (a)(3).) It also amended section 189. Now, under section 189, to be liable for murder under the felony murder doctrine a participant in enumerated crimes must have been the actual killer; or with the intent to kill, aided and abetted the actual killer in commission of first degree murder; or was a major participant in the underlying felony and acted with reckless indifference to human life. (§ 189, subd. (e); *People v.*

5

*Perez* (2020) 54 Cal.App.5th 896, 902; *People v. Munoz, supra,* 39 Cal.App.5th at pp. 749-750, rev.gr.)

    2. *Section 1170.95's petitioning procedure*

Senate Bill 1437 also added section 1170.95, which created a procedure whereby persons convicted of murder under a felony murder or natural and probable consequences theory may petition in the sentencing court for vacation of their convictions and resentencing. (*People v. Torres, supra,* 46 Cal.App.5th at p. 1175, rev.gr.) A defendant is eligible for relief under section 1170.95 only if he or she meets three conditions: (1) the person must have been charged with murder under a theory of felony murder or murder under the natural and probable consequences doctrine, (2) must have been convicted of first or second degree murder, and (3) could no longer be convicted of first or second degree murder due to changes to sections 188 and 189 wrought by Senate Bill 1437. (§ 1170.95, subd. (a); *People v. Duke* (2020) 55 Cal.App.5th 113, 121; *People v. Drayton* (2020) 47 Cal.App.5th 965, 973.)

Evaluation of a section 1170.95 petition requires a multi-step process: an initial review to determine the petition's facial sufficiency; a prebriefing, first prima facie review to preliminarily determine whether the petitioner is statutorily eligible for relief as a matter of law; and a second, postbriefing prima facie review to determine whether the petitioner has made a prima facie case that he or she is entitled to relief. (*People v. Tarkington* (2020) 49 Cal.App.5th 892, 897–898, review granted Aug. 12, 2020, S263219; *People v. Verdugo, supra,* 44 Cal.App.5th at pp. 327–330, rev.gr.; *People v. Torres, supra,* 46 Cal.App.5th at pp. 1177–1178, rev.gr.; *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1165–1166.)

When conducting the first prima facie review, the court must determine, based upon its review of readily ascertainable information in the record of conviction and the court file, whether the petitioner is statutorily eligible for relief as a matter of law, i.e., whether he or she was convicted of a qualifying crime, based on a charging document that permitted the prosecution to proceed under the natural and probable consequences doctrine or a felony murder theory. (*People v. Tarkington, supra*, 49 Cal.App.5th at pp. 898–899, rev.gr.; *People v. Verdugo, supra*, 44 Cal.App.5th at pp. 329–330, rev.gr.) If it is clear from the record of conviction that the petitioner cannot establish eligibility as a matter of law, the trial court may summarily deny the petition. (*People v. Bentley* (2020) 55 Cal.App.5th 150, 152; *People v. Tarkington*, at p. 898; *People v. Verdugo*, at pp. 329–330.)

If, however, the petitioner's ineligibility is not established as a matter of law, the court must, after appointing counsel and considering briefing from the parties, determine whether the petitioner has made a prima facie showing that he or she is entitled to relief. (*People v. Verdugo, supra*, 44 Cal.App.5th at p. 330, rev.gr.; *People v. Tarkington, supra*, 49 Cal.App.5th at p. 898, rev.gr.)

To make this second determination, the court employs the familiar standard for issuance of an order to show cause in a habeas corpus proceeding. That is, the court must take petitioner's factual allegations as true and make a preliminary assessment regarding whether the petitioner would be entitled to relief if the factual allegations were proved. (*People v. Verdugo, supra*, 44 Cal.App.5th at p. 328, rev.gr.; *People v. Tarkington, supra*, 49 Cal.App.5th at p. 898, rev.gr.) At this stage, the " 'trial

court should not evaluate the credibility of the petition's assertions, but it need not credit factual assertions that are untrue as a matter of law—for example, a petitioner's assertion that a particular conviction is eligible for relief where the crime is not listed in subdivision (a) of section 1170.95 as eligible for resentencing.  Just as in habeas corpus, if the record "contain[s] facts refuting the allegations made in the petition . . . the court is justified in making a credibility determination adverse to the petitioner." [Citation.]  However, this authority to make determinations without conducting an evidentiary hearing pursuant to section 1170.95, subd. (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion . . . .' [Citation.]" (*People v. Nguyen*, *supra*, 53 Cal.App.5th at pp. 1165–1166; *People v. Drayton*, *supra*, 47 Cal.App.5th at p. 980; *People v. Perez*, *supra*, 54 Cal.App.5th at pp. 903–904.)

If the petitioner makes a prima facie showing of entitlement to relief, as the next step the court must issue an order to show cause and conduct a hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts.  (§ 1170.95, subds. (c), (d); *People v. Nguyen*, *supra*, 53 Cal.App.5th at p. 1165–1166.)  At that hearing, the burden of proof is on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.  Both the People and the petitioner may rely on the record of conviction and present new and additional evidence to demonstrate the petitioner is, or is not, entitled to resentencing.  (§ 1170.95, subd. (d)(3).)  "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and

8

enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1170.95, subd. (d)(3); *People v. Nguyen*, at p. 1166.)

3. *Because Bobo made a prima facie showing of entitlement to relief, reversal is required*

Bobo asserts that the trial court's denial of his petition without issuing an order to show cause and conducting an evidentiary hearing violated the terms of the statute and his due process rights. He contends that the ruling must be reversed and the matter remanded with directions to issue an order to show cause and hold a hearing at which the parties can present evidence. The People agree that the trial court "prematurely weighed facts" in order to dismiss the petition, and should have issued an order to show cause and held such a hearing.

While not completely clear, it appears that the trial court conducted the first prima facie review and concluded Bobo was not ineligible as a matter of law. The court was correct in this respect. Bobo was convicted of a qualifying crime, first degree murder. The jury found codefendant Smith personally used a firearm, whereas in regard to Bobo, it found only a principal armed enhancement true. Thus, Bobo was not the actual killer. The record does not contain the jury instructions, but it appears Bobo was convicted of murder by virtue of the felony murder rule. The information did not allege that the murder was willful and premeditated, suggesting the People relied on the felony murder rule to obtain a conviction for first, rather than second, degree murder. (See § 189, subds. (a) & (b).) The prosecutor's and trial court's statements at sentencing in 1983 suggest the conviction was based on a felony murder theory. The prosecutor characterized the crime as a robbery-murder; the court stayed

9

sentence on the robbery and the conspiracy to rob under section 654 because "the conspiracy to commit robbery was part of the robbery, which was part of the murder." And, when opposing Bobo's petition below, the People acknowledged that Bobo was convicted pursuant to the felony murder rule.

Thus, the trial court was next required to determine whether Bobo made a prima facie case that he was entitled to relief. (§ 1170.95, subd. (c); *People v. Verdugo*, *supra*, 44 Cal.App.5th at p. 330, rev.gr.; *People v. Tarkington*, *supra*, 49 Cal.App.5th at p. 898, rev.gr.) As stated *ante*, in making that inquiry, the court must treat petitioner's factual allegations as true and make a preliminary assessment of whether he would be entitled to relief if the allegations were proved. (*People v. Verdugo*, at p. 328; *People v. Tarkington*, at p. 898.) Here, assuming Bobo was convicted under the felony murder rule, he may not obtain relief if he was either a direct aider and abettor and had the intent to kill, or if he was a major participant in the robbery and acted with reckless indifference to human life. (§ 189, subd. (e).)

As to the first theory—that Bobo was a direct aider and abettor—nothing in the limited record before us indicates that the jury found Bobo acted with the intent to kill. Nothing in the record demonstrates, as a matter of law, that he had the intent to kill. And, his declaration, attached to his petition, states that he did not have such an intent. At this juncture, this contention must be accepted as true.

As to the second theory, even assuming arguendo that Bobo was a major participant in the crime, the question of whether he acted with reckless indifference turned upon an assessment of the facts. The record before us does not reflect a jury or judicial

10

finding on the issue at Bobo's trial. The fact that a defendant knowingly participates in an armed robbery is, by itself, insufficient to demonstrate reckless indifference. (*People v. Banks* (2015) 61 Cal.4th 788, 809 [awareness that a confederate was armed, and that armed robberies carry a risk of death, is not enough to demonstrate reckless indifference]; *People v. Clark* (2016) 63 Cal.4th 522, 618 ["[t]he mere fact of a defendant's awareness that a gun will be used in the felony is not sufficient to establish reckless indifference to human life"].)

Therefore, the court's ruling was premised on its own evaluation of the facts. While a court must weigh the evidence after the issuance of an order to show cause and a hearing, such factfinding is beyond the court's authority at the second prima facie review stage. (*People v. Perez, supra*, 54 Cal.App.5th at pp. 903–904; *People v. Drayton, supra*, 47 Cal.App.5th at p. 980 [court's authority to make determinations without conducting an evidentiary hearing is limited to readily ascertainable facts from the record, rather than factfinding involving the weighing of evidence].)

The trial court based its denial of the petition on the appellate opinion in Bobo's original appeal. A trial court can rely on an appellate opinion when ruling on a section 1170.95 petition. (See, e.g., *People v. Gomez* (2020) 52 Cal.App.5th 1, 15, review granted October 14, 2020, S264033; *People v. Tarkington, supra*, 49 Cal.App.5th at p. 909, rev.gr.; *People v. Law* (2020) 48 Cal.App.5th 811, 821, review granted July 8, 2020, S262490; *People v. Verdugo, supra*, 44 Cal.App.5th at p. 333, rev.gr.; *People*

*v. Lewis* (2020) 43 Cal.App.5th 1128, 1136–1138 & fn. 7, review granted March 18, 2020, S260598.)[4]

But, here the 1984 opinion does not provide a basis from which the court could deny the petition without weighing the facts.  One of Bobo's contentions in his direct appeal was that his sentence of 26 years to life in prison constituted cruel or unusual punishment.  In rejecting that argument, the appellate court reasoned that an examination of the offense or the offender, with particular regard to the degree of danger to society, demonstrated Bobo's sentence was not constitutionally excessive.  The court distinguished the facts in Bobo's case from those in *People v. Dillon* (1983) 34 Cal.3d 441, observing that although Bobo was 17 years old at the time of the crime, he had been involved with narcotics since the age of eight, involved in criminal activities since the age of 11, and was an admitted, active gang member.  The court then said:  "There was obvious premeditation in the commission of the crime in that he knew Isiah Smith was armed and knew that he was going to the car wash with Smith for the purpose of committing an armed robbery.  [¶]  The record thus establishes that appellant's sentence was appropriate in terms of his 'personal responsibility and moral guilt' [citation] and that he gave every indication of being 'the prototype of one who poses a grave threat to society . . . .' "

The 1984 opinion, fairly read, did not suggest that the *murder* was premeditated, only that the robbery was.  As noted,

---

[4]     Our Supreme Court is currently considering whether trial courts may consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under section 1170.95.  (*People v. Lewis*, *supra*, S260598.)

12

the fact a defendant participates in an armed robbery is, by itself, insufficient to demonstrate he or she acted with reckless indifference to human life. (*People v. Banks*, *supra*, 61 Cal.4th at p. 809.) The question of whether the sentence was cruel or unusual does not necessarily equate to the question of whether a defendant is entitled to relief under section 1170.95, and it did not do so here.

Thus, because Bobo made a prima facie showing he is entitled to relief, the trial court erred by weighing the evidence and denying the petition, rather than issuing an order to show cause. We remand with directions to allow Bobo to file a reply brief, and for the court to issue an order to show cause and hold a hearing in accordance with the procedures set forth in section 1170.95. We offer no opinion on whether, given the facts of the case, Bobo could or could not have been convicted of murder under sections 188 and 189, as amended by Senate Bill 1437.[5]

---

[5] In light of our conclusion, we need not address Bobo's contention that the denial of his petition not only ran afoul of the procedures set forth in section 1170.95, but also violated his due process rights.

13

## DISPOSITION

The trial court's order denying Bobo's section 1170.95 petition is reversed.  The matter is remanded with directions to allow Bobo to file a reply brief, and for the court to issue an order to show cause and conduct further proceedings in accordance with section 1170.95.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                                    EDMON, P. J.



I concur:



                    EGERTON, J.


14

LAVIN, J., Concurring:

I join the majority in reversing the trial court's order. I write separately, however, to voice my disagreement with certain portions of the majority's analysis. Specifically, I disagree that a trial court may summarily deny a statutorily-compliant resentencing petition under Penal Code section 1170.95 based on its independent review of the record of conviction. (See *People v. Tarkington* (2020) 49 Cal.App.5th 892, 917, review granted Aug. 12, 2020, S263219 (dis. opn. of Lavin, J.).) I also disagree that Section 1170.95 "requires two prima facie reviews—much less two reviews that are substantively different—and entitles a petitioner to counsel during only the second one." (*People v. Cooper* (2020) 54 Cal.App.5th 106, 118.)

LAVIN, J.

1